IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

RONALD FRANK MURPHY,
     Plaintiff,

vs.                                     Case No.: 5:15cv97/EMT

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,
     Defendant.
_____/

## MEMORANDUM DECISION AND ORDER

This case has been referred to the undersigned magistrate judge for disposition pursuant to the authority of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, based on the parties' consent to magistrate judge jurisdiction (*see* docs. 9, 10).  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act"), for review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for  disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34, and supplemental security income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## I.      PROCEDURAL HISTORY

On November 1, 2011, Plaintiff filed applications for DIB and SSI, and in each application he alleged disability beginning August 29, 2008 (tr. 11) (he later amended his onset date to March 30, 2011 (*see* Tr. 14)).[1]  His applications were denied initially and on reconsideration, and thereafter he requested a hearing before an administrative law judge ("ALJ").  A hearing was held on July 17, 2013, and on October 4, 2013, the ALJ issued a decision in which he found Plaintiff "not disabled," as defined under the Act, at any time through the date of his decision (Tr. 11–26).  The Appeals Council subsequently denied Plaintiff's request for review.  Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007).  This appeal followed.

## II.     FINDINGS OF THE ALJ

In denying Plaintiff's claims, the ALJ made the following relevant findings (*see* Tr. 11–26):

---

[1] All references to "tr." refer to the transcript of Social Security Administration record filed on September 21, 2015 (ECF No. 12).  Moreover, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system or any other page numbers that may appear.

Case No.: 5:15cv97/EMT

(a)     Plaintiff met the insured requirements of the Act through March 31, 2011[2];

(b)     Plaintiff had not engaged in substantial gainful activity since March 30, 2011, the amended alleged onset date;

(c)     Plaintiff had the following severe impairments: osteoarthritis of the right knee status post surgical repair; osteoarthritis of the right wrist; asthma; and hypertension;

(d)     Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);

(e)     Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) such that he could occasionally lift/carry 10 pounds and frequently lift/carry less than 10 pounds. He could stand and walk for two hours in an eight-hour workday.  He could sit for six hours in an eight-hour workday.  He could frequently balance, stoop, kneel, crouch, crawl, climb, and perform handling and fingering, bilaterally. He should avoid concentrated exposure to dust, fumes, and other pulmonary irritants;

(f)     Plaintiff was unable to perform any past relevant work;

(g)     Plaintiff was born on March 5, 1966 and was 42 years old, which is defined as a younger individual aged 45–49, on the alleged disability onset date;

(h)     Plaintiff had a limited education and was able to communicate in English;

---

[2] Thus, the time frame relevant to Plaintiff's claim for DIB is March 30, 2011 (date of alleged onset), through October 14, 2013 (the date the ALJ issued his decision).  The time frame relevant to her claim for SSI is November 1, 2011 (the date she applied for SSI) through October 14, 2013. *See* Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (indicating that SSI claimant becomes eligible to receive benefits in the first month in which she is both disabled and has an SSI application on file).

Case No.: 5:15cv97/EMT

(i)     Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that Plaintiff was "not disabled," whether or not he had transferable job skills;

(j)     Considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform;

(k)     Plaintiff had not been under a disability, as defined in the Act, from March 30, 2011, through the date of the decision.

## III.   STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards.  Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991).  As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole

the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998); Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy." *Id*. § 423(d)(2)(A).  Pursuant to 20 C.F.R.

§ 404.1520(a)–(g),[3] the Commissioner analyzes a disability claim in five steps:

1.     If the claimant is performing substantial gainful activity, he is not disabled.

2.     If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3.     If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.     If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled.

5.     Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his RFC and vocational factors, he is not disabled.

---

[3] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416).  Therefore, citations in this Order should be considered to refer to the appropriate parallel provision.  The same applies to citations of statutes or regulations found in quoted court decisions.

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work.  20 C.F.R. § 404.1512.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  <u>MacGregor v. Bowen</u>, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then prove he cannot perform the work suggested by the Commissioner.  <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.     THE ALJ'S STEP FIVE ASSESSMENT

Because Plaintiff does not challenge the ALJ's RFC assessment, the ALJ's conclusions regarding the severity of Plaintiff's impairments, or the relevant medical findings, they will not be discussed.  Plaintiff challenges only the findings of the vocational expert ("VE") regarding available jobs in the national economy that Plaintiff would be able to perform and the ALJ's reliance on those findings.

Prior to the July 17, 2013, administrative hearing, Plaintiff submitted a letter request that a subpoena be issued requiring the VE to bring any documentation that he relied upon in reaching his conclusions as to available jobs (Tr. 279–80).  This request did not purport to be based on a particular issue that had arisen in the case at hand; rather Plaintiff provided:

> It has been my experience that vocational experts often testify as to numbers of jobs that exist in various labor markets, nationally, regionally, and locally, and for a variety of occupations; however, there is frequently a failure to identify the statistical source(s) for said opinions. Vocational witnesses, when questioned cite various sources of statistical information including, but not limited to, census data, Department of Labor data, and computer programs such as Skill TRAN, etc.  However, unless the vocational witness brings the documentation upon which he/she relies in forming opinions regarding the numbers of jobs available in various labor markets, it is not possible to adequately cross examine the vocational witness.

(Tr. 279).

Plaintiff also objected to the VE testifying to the number of available jobs in the national, regional, or local economy "unless the vocational witness can produce valid, reliable, and reproducible data to support their opinions, conclusions, and testimony" (Tr. 280).  The ALJ denied the objection and subpoena request at the beginning of the administrative hearing, stating:

> I'm going to overrule the objections that are contained in the letter.  I'm not going to issue a subpoena.  I don't think it's reasonably necessary for the full presentation of the case, it's unduly burdensome, and I'm not going to do that.  And I'm going to point out to you that the letter that your firm is sending out, I assume they're sending it out in all parts of the country.  And I would refer you to Bryant v. Commissioner in the 11th Circuit that addresses that issue.  And you will, of course, have an opportunity to ask the vocational expert questions, but given the Bryant case your ability to challenge the numbers is going to be somewhat limited, counsel.

(Tr. 38).

The VE subsequently testified at the hearing that, given Plaintiff's age, education, work experience, and RFC, he would he able to perform the requirements of representative occupations such as telemarketer/telephone solicitor, bench hand, and telephone information clerk (Tr. 24–25, 74–75).  The ALJ then asked about the sources for his job numbers:

> VE:  I have relied—no on I'm using the [sic]—actually I'm looking at SkillTRAN, but they don't break it down enough to—they just give blanket numbers with different DOT's.
>
> ALJ:  SkillTRAN is a computer program?
>
> VE:  It is.
>
> ALJ:  Okay.
>
> VE:  And I'm also getting updates—excuse me—from the Occupational Employment Quarterly, and I'm relying now on the first quarter of 2013.

(Tr. 77–78).  Plaintiff's counsel then had the opportunity to ask questions, and the following exchanges took place:

> ATT:  Your experience, your background and training and experience has been in placing individuals in jobs and not tabulating job numbers.  Is that correct?
>
> VE:  No, I never have tabulated numbers.  I use numbers because I work closely with job services and so for local numbers.  But I never have actually done a nationwide job number survey.  Absolutely not.

. . .

ATT:   Now, as a general proposition, the demands of a job can vary from day to day.  Would you agree with that?

VE:   I agree.

ATT:   Okay.   And some days the jobs will be less physical or mentally demanding than other days.  Is that correct?

VE:   Well, I think that depends on the skill level.

ATT:   Okay.

VE:   Some—because I work—I've placed a lot of people, you know, from ARC, and the skill levels don't change daily and they're very—you know, the day is exactly the same when they walk in every single day.

ATT:   Okay.  Well, let's address---

VE:   So it depends on, you know, the—actually the SVP.  It depends a lot on the SVP.

ALJ:   Counsel, I'm going to ask you to move along.  If you want to ask a specific hypothetical question—because I don't really know where you're going with your testimony.  If you want to ask the vocational expert a hypothetical question because you think that your client has additional limitations that are supported by the record, I'm happy to let you do that.  But if based on the VE's expertise, I'm not going to ask her to produce—you know, consistent with that objection letter, I'm not going to ask her to produce anything in addition to what her testimony is.  So, you know, tell me where you're going with this line of questioning.

ATT:   I'm trying to establish the basis, Your Honor, for her job numbers, the job numbers that she provided, where they come from, and why the positions—

ALJ:   She told you where they come from.

ATT: —why the positions were selected.  I understand that.

ALJ: She—they came from SkillTRAN and Occupational Employment Quarterly.  That's where the numbers came from.

. . .

So what is it that you want to establish from her?

ATT: I'm establishing the methodology where she determined the numbers, how she got there.  I promise Your Honor five minutes or less.

ALJ: Go ahead.

ATT: Thank you, Your Honor.

ALJ: How did you arrive at your numbers?

VE: I have the local numbers from job services, and then I use—I update myself usually two quarters of a year with Occupational Employment Quarterly.  Even though I don't identify a lot of sedentary jobs that Occupational Employment Quarterly does, because our DOT has them at medium or light when they are actually now numbers are (sic) sedentary or light.  So I use that because it breaks it down by SVP, and also whether it's light, sedentary, medium or heavy.  So I actually—

ALJ: You gave me jobs that are representative jobs?  In other words, there are other jobs that an individual with the limitations that I gave you could also perform?

VE: That is correct.

ALJ: Okay.  We're done, it's 10:30.

ATT: Thank you, Your Honor.

ALJ:   Anything else other than vocational expert questioning that you want to offer for—on behalf of you or your client?

ATT:   Other than that, no, Your Honor.

(Tr. 78–82).

After the hearing, Plaintiff submitted a brief claiming that he did not get a full and fair hearing as he was denied a full opportunity to cross-examine the VE (Tr. 289). Plaintiff stated that the VE admitted to not being a "numbers expert," and as a result, since the VE was not allowed to answer questions regarding how she arrived at her job numbers, her testimony as to her findings "cannot be considered substantial evidence that a significant number of jobs exists in the national economy" (Tr. 290).

In his decision, the ALJ addressed the VE's findings:

Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is otherwise consistent with the information contained in the Dictionary of Occupational Titles. In addition to the Dictionary of Occupational Titles, the vocational expert also testified that she based her testimony on her professional knowledge and experience, SkillTRAN, and the Occupational Employment Quarterly. She clarified that the identified jobs constitute a representative (as opposed to exhaustive) list of occupations that an individual with the [RFC] could perform. Counsel's request to subpoena her in advance was not reasonably necessary for the full presentation of the case and would have been unduly burdensome in this case.

As previously mentioned, in a post-hearing brief, counsel asserted that the undersigned abused his discretion and denied the claimant a "fair and full hearing" because he "could not fully cross-examine the vocational witness." Counsel maintained that certain aspects of the vocational

expert's testimony were "not supported by generally accepted scientific processes, method or standards beyond the scope of his training, education, and experience" (Exhibit 12E).

A sufficient basis for vocational expert testimony can be the vocational expert's professional knowledge and experience as well as reliance on job information available from various governmental and other publications, of which we take administrative notice (20 CFR 404.1560(b)(2), 404.1566(d), 416.960(b)(2), and 416.966(d)).   The vocational expert specifically identified the sources of her job numbers. There is no evidence that her testimony was not supported by generally accepted scientific processes, methods, or standards.

The regulations provide that the agency will take administrative notice of reliable job information from the Dictionary of Occupational Titles, Occupational Outlook Handbook, and other reliable publications to determine that jobs exist in significant numbers either in the region where the claimant lives or in several regions of the country (20 CFR 404.1566(d) and 416.966( d)).  For each representative occupation, the vocational expert should identify the job title and Dictionary of Occupational Titles code, skill level, exertional level, and estimated number of jobs in the region and nation for each.  She should further explain variations from the Dictionary of Occupational Titles.  In this case, she stated that there were no variations from the Dictionary of Occupational Titles.

Furthermore, vocational expert examination is limited to pertinent questions on material issues.  Just as the undersigned has the authority to decide whether to use a vocational expert or other specialist, he is charged with finding the appropriateness of the questions asked and the answers given (20 CFR 404.1566(e) and 416.966(e) and HALLEX I-2-6-74).   The vocational expert's testimony was consistent with the Dictionary of Occupational Titles.

There is no evidence that the claimant was denied a fair and full hearing in this case.  The undersigned allowed counsel every opportunity to cross-examine the vocational expert within the scope of the purpose of

the hearing. Counsel was granted every opportunity to pose hypotheticals to the vocational expert.  The abuse of discretion allegation is without merit for the foregoing reasons.

(Tr. 25–26).

V.    DISCUSSION

Plaintiff claims that the ALJ erred during the hearing by precluding him from questioning the VE regarding the reliability of the resources she used in determining that there was other work in the economy that Plaintiff could have performed despite his impairments.  He claims that as a result there was an unresolved issue as to the reliability of the VE's resources, and consequently he did not receive a fair hearing, making remand appropriate.

Because an administrative hearing before an ALJ is not adversary in nature, the ALJ has a basic obligation to develop a full and fair record.  Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997); Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981).  Though this duty becomes an especially heightened duty if the claimant is not represented by counsel, the basic obligation exists even if there is representation. Brown v. Shalala, 44 F.3d 931, 935 (11th Cir. 1995); Cowart, 662 F.2d at 735.  "[I]n any case, there must be a showing of prejudice to trigger a remand to the Secretary for reconsideration."  Brown, 44 F.3d at 935 (citing Kelley v. Heckler, 761 F.2d 1538, 1540 & n.2 (11th Cir. 1985)).

Case No.: 5:15cv97/EMT

As previously stated, once it is established that Plaintiff has an impairment and the process reaches step five, the burden shifts to the Commissioner to show the existence of other jobs which the claimant can perform.  MacGregor, 786 F.2d at 1052; Gibson v. Heckler, 762 F.2d 1516, 1518 (11th Cir. 1985).  When the ALJ uses a VE to help in this determination, the ALJ asks hypothetical questions to ascertain whether someone with the claimant's limitations and capacity would be capable of securing employment in the national economy.  Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004); Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).

The pivotal case in regard to the issue at bar—and the case upon which the ALJ relied—is the Eleventh Circuit opinion in Bryant v. Comm'r of Social Sec., 451 F. App'x 838 (11th Cir. 2012).[4]  In affirming the denial of benefits to the plaintiff Bryant, that court held:

> The Social Security regulations provide that an ALJ may rely upon a VE's knowledge or expertise.  *See* 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2); *see also* Jones, 190 F.3d at 1230 (explaining that a VE's testimony is "crucial to . . . step 5 of the sequential evaluation process" because the VE can supplement the Dictionary of Occupational Titles ("DOT") with additional information gleaned from his experience with employers and from literature such as census reports).

---

[4]  While unpublished opinions are not considered binding, they may be considered as persuasive authority.  *See* 11th Cir. R. 36-2; *see also* United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000).

. . .

Bryant's argument that the VE failed to explain adequately how she reduced the number of positions to account for his functional limitations also lacks merit.   The VE testified that she based her reductions on census figures, state information, labor market surveys, and job analyses.  Given that information, she arrived at an "approximate percentage" of jobs that an individual with Bryant's functional limitations would be able to perform.   Thus, the record reflects that the VE had a reasoned basis for the figures at which she arrived.  The Social Security regulations provide that an ALJ may rely on a VE's knowledge and expertise, *and they do not require a VE produce detailed reports or statistics in support of her testimony*.   Because a reasonable person would accept the VE's testimony as being adequate to support a conclusion that Bryant is able to perform other work that exists in the national economy, the ALJ's Step Five findings are supported by substantial evidence.

(*id.* at 839–40) (emphasis supplied); *see also* Pena v. Comm'r of Soc. Sec., 489 F. App'x 401, 402 (11th Cir. 2012) (rejecting argument that the VE's downward adjustment of available jobs the plaintiff could perform should have thereby required the VE to specify the formula he used; further stating, "That level of statistical specificity is not required.  In fact, the Social Security regulations clearly provide that a VE's knowledge and expertise may supply a reasoned basis for his conclusions."); Leonard v. Comm'r of Soc. Sec., 409 F. App'x 298, 301 (11th Cir. 2011) ("A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required.") (quoting Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005)); Jones, 190 F.3d at 1230 (where VE compiled the employment

information from a personal survey, contact with employers and other VE's, and a

survey of literature such as census reports and county business patterns, the ALJ could

"rely solely on the VE's testimony.").

Plaintiff first challenges the VE's testimony on grounds that her reliance on the

"SkillTRAN" software package and on the Occupational Employment Quarterly were

suspect because that software tool and that publication are not recognized as "reliable"

sources.  Plaintiff asserts that both are unreliable because they do not appear on the

list of publications in 20 C.F.R. § 404.1566(d).  The list Plaintiff refers to does not

appear to be exhaustive or exclusive.  The provision states that "we will take

administrative notice of reliable job information available from various governmental

and other publications.  *For example*, we will take notice of . . . [five identified

publications]."  *Id.* (emphasis supplied).  Plaintiff cites no authority to suggest that the

provision's use of the phrase "take notice of" means anything in the legal sense to

indicate that the publications on the list are imbued with greater reliance than those

not on the list.  Neither does this court read the provision in that manner, especially

in light of the Eleventh Circuit opinions described above that express reliance upon

a wider array of publications as used by vocational experts.  Moreover, the VE in this

case stated that "actually I'm looking at SkillTRAN, but they don't break it down

enough to—they just give blanket numbers with different DOT's," thus suggesting

that the VE does not simply rely upon SkillTRAN but uses its data in her overall analysis (Tr. 77).  Finally, the VE testified that her testimony was consistent with the DOT (Tr. 77).

Plaintiff also contends that, as far as assessing available jobs in the economy, the VE admitted to never having "tabulated numbers" herself.  Plaintiff, however, fails to show how this is an essential or necessary aspect of a VE's task.  As the VE also provided, "I use numbers because I work closely with job services and so for local numbers.  But I never have actually done a nationwide job number survey." (Tr. 78). It is thus apparent that the VE uses or interprets the "numbers" supplied by other organizations or publications.  Plaintiff does not identify what is insufficient about this approach, and failing that, this court sees no inherent error in the approach that would overturn the reliance that is ordinarily placed on a VE's results.

Finally, Plaintiff argues that the crux of the error was not in the ALJ's reliance on the VE's testimony, but in the fact that the ALJ affirmatively prevented Plaintiff's inquiry into the VE's job numbers sources.  Plaintiff attempts to distinguish the Eleventh Circuit's holding in <u>Bryant</u> on this basis, his point being that in <u>Bryant</u> there was no evident issue with, or no limitations placed upon, the questioning of the VE during the administrative hearing.  Thus, Plaintiff states that <u>Bryant</u> and the other

cases cited above do not support the Commissioner's apparent position that the ALJ can prevent counsel from deeper inquiry into the reliability of the VE's sources.

The court does not agree with Plaintiff's position.  The holding of <u>Bryant</u> and its progeny is that the ALJ in the first instance is entitled rely on the VE's testimony, not a reviewing court or an appellate court.  Thus, whether the issue of a VE's testimony is raised at the administrative hearing level or during later judicial review is of little importance.  More importantly, Plaintiff overlooks that the Eleventh Circuit holdings provide not only that the ALJ may rely on a VE's expert testimony but may do so without requiring the VE to produce detailed reports or statistics in support of that testimony.  The VE disclosed her sources, where she obtained her "numbers," and how she updated them.  Other than to posit general attacks upon the VE's source materials—attacks which the court has refuted—there is no indication from Plaintiff that the VE's testimony was itself unreasonable.  Frankly, it appears from the record that the whole of Plaintiff's approach was to attack SkillTRAN and Occupational Employment Quarterly as source materials, not the VE's extrapolation from them.  But the ALJ was entitled to rely upon the VE without further delving into the details of her extrapolations and findings.

Last, it is noteworthy that, while Plaintiff states he was prevented or curtailed from questioning the VE, the record shows that he was provided with opportunities

to question her.  Plaintiff indicates that the ALJ was abrupt in cutting off counsel's questioning of the VE, but the record does show that some amount of questioning from counsel did occur, and despite the ALJ interceding, he did allow counsel another five minutes to conduct further inquiry.  What followed immediately thereafter, apparently more questioning from the ALJ instead of counsel, is quizzical, but nonetheless counsel appeared to have at least some opportunity for questioning.  In any event, as Plaintiff acknowledges, the administrative hearing was not adversarial, and the ALJ appeared to have elicited enough testimony from the VE to provide a satisfactory basis for his reliance on her testimony.  Plaintiff does not provide any contrary information that might have dismantled the ALJ's reliance, nor, in accordance with the Step Five procedure, does he show that he would not be able to perform any of the jobs that the VE identified as available in the national economy. *See* MacGregor, Hale, *supra*.

VI.    CONCLUSION

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed.  42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote, 67 F.3d at1560.  Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

Accordingly, it is **ORDERED** that the decision of the Commissioner is

**AFFIRMED**, that this action is **DISMISSED,** and that the clerk is directed to close

the file.

At Pensacola, Florida this 30th day of September 2016.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**